MITCHELL METAL PRODUCTS, Inc., v.
BERKELEY EQUIPMENT CO. et al.

No. 25.

District Court, W. D. Pennsylvania.

Jan. 10, 1941.

Walter Booth and Orgill, Maschke, Wickham, Duffy & Loux, all of Cleveland, Ohio, for plaintiff.

Orson Graham and Gunnison, Fish, Gifford & Chapin, all of Erie, Pa., for defendants.

SCHOONMAKER, District Judge.

This case was heard on complaint, answer of the Berkeley Equipment Company, L. J. Berkeley, the officers and directors of that company, and proofs. The Aero Supply Company was served with summons, but did not answer. The answer of the Berkeley Equipment Company avers that there is no corporation known as the Aero Supply Company, but there is a corporation bearing the name of "The Aero Supply and Mfg. Co. Inc." which is a stockholder of the Berkeley Equipment Company; and that is the only relationship existing between these two corporations.

The facts of the case may be briefly summarized as follows:

In the fall of 1938, the plaintiff employed the defendant, the Berkeley Engineering Company, an Ohio corporation of which the defendant, L. J. Berkeley, a mechanical engineer, was manager, to construct for the plaintiff according to ideas conceived by its officers, a machine for the automatic welding of powder cans, under a pledge of secrecy, and with the agreement that no machine of that sort would be constructed by said the Berkeley Engineering Company for anyone else. In the negotiations over the constructing of this welding machine, L. J. Berkeley represented the Berkeley Engineering Company. In accordance with that understanding, the plaintiff placed a written order with the Berkeley Engineering Company on December 8, 1938, for the construction of the machine at a cost of $2,300. The contract was made in the State of Ohio. This machine was built by the Berkeley Engineering Company at a total cost of between $3,200 and $3,300, and was delivered to the plaintiff corporation. Through the use thereof, on one job alone, plaintiff was able to realize a profit of some $49,000.

L. J. Berkeley is now president and general manager of the Berkeley Equipment Company, a Pennsylvania corporation, which has in process of manufacture a machine similar to the one made by the Berkeley Engineering Company for plaintiff, and is proposing to deliver that machine to John Wood Company, a competitor of plaintiff. The Berkeley Engineering Company is now out of business; and L. J. Berkeley is now president of the Berkeley Equipment Company, he and his wife, F. B. Berkeley owning a large part of its stock.

■ On these facts, we are of the opinion that the plaintiff is entitled to the injunction prayed for. The Mitchells conceived the idea of an automatic welding machine. They did not have the mechanical skill to construct it, and hired Berkeley, who held himself out as possessing the necessary knowledge, experience, and skill to undertake work of the kind and character plaintiffs had in mind, to construct the machine. There was a pledge of secrecy as to the design of this machine at the time the order for the machine was given. That this is so is fully evidenced by the subsequent conduct of the parties in their negotiations over the charges of the Berkeley Engineering Company for doing the work. Berkeley admits this. See his testimony, pp. 53, 54 of the record as follows:

"Q. Now, you knew at that time that this matter was a matter of profound secrecy with the Mitchells and between the Mitchells and you, didn't you? A. On August 10?

"Q. On August 15. A. On August 15, yes, at that time; I had been told often enough."

In a letter to plaintiff dated August 3, 1939, (Exhibit G), Berkeley writes as follows: "Again you appreciate that our profit chances end with the delivery of the equipment we build. If we do not profit on the job, we never do. There is no comeback."

Again, by letter of August 15, 1939, Berkeley writes plaintiff: "So far we have kept our knowledge to ourselves. It isn't in the book however and if you cannot remember all the previous talks together our memory will also fail us."

And again, by letter of August 19, 1939, (Exhibit L), Berkeley writes plaintiff: "I can further assure you that as long as I am in the management of this company and you accept this proposal, there will be no welding fixtures constructed by us for welding heads in powder boxes, without your permission. We had never considered this as a possibility until we got the impression that you did not care how we survived so long as you had what you wanted."

■ It is our view that there inheres in agreements of the character involved in this litigation an obligation upon a person or corporation accepting such a contract not to disclose the details of the machine constructed, to another.

Our authority for that conclusion is found in Standard Parts Co. v. Peck, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560, 32 A.L.R. 1033, in which the Supreme Court held that the result of the inventive skill of one employed at a stated compensation to develop a process and machinery to secure a certain result for the benefit of the employer, is the property of the employer and not the employee.

■ The defendants contend that the order of December 8, 1938, (Defendants' Exhibit No. 1) is a unilateral contract between the parties, and the only contract between the parties, and containing no conditions as to secrecy, is nonexistent. We cannot accept that view. Under the authority of Standard Parts Co. v. Peck, supra, we must hold that the order of December 8, 1938, was given in consideration of the pledge of secrecy made by Berkeley. That very pledge was inherent in Berkeley's employment. Berkeley certainly should not be permitted to construct a similar machine for a competitor of plaintiff.

■ As to defendant's contention that the plaintiff has failed to sustain the burden of proof that there was any understanding that the process and machine construction was to be kept secret, we find no merit in that contention. The evidence offered by plaintiff fully sustains the conclusion that the order was given on an express promise of secrecy. In our view, the plaintiff has fully met the burden of proof, whether we apply the Pennsylvania rule where this suit is brought, or the Ohio rule where the contract was made.

■ As to the amount in controversy, the amount is certainly over $3,000. The plaintiff paid some $3,300 for the machine, and has earned in profit by the use of the machine, over $49,000.

Our findings of fact and conclusions of law in accordance with this opinion are filed herewith. A decree in accordance therewith may be submitted on five days' notice to opposing counsel.